O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOHAMMAD MOAYERY, an individual,<br><br>            Plaintiff,<br><br>    v.<br><br>STATE FARM GENERAL INSURANCE COMPANY, an Illinois corporation; and Does 1 through 100, inclusive,<br><br>            Defendants. | Case No.: 2:22-cv-09261-MEMF-(Ex)<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 23]** |

Before the Court is the Motion for Summary Judgment (the "Motion") filed by Defendant State Farm General Insurance Company ("Defendant" or "State Farm"). For the reasons stated herein, the Court hereby **DENIES** the Motion for Summary Judgment.

/ / /

/ / /

/ / /

/ / /

1

1    **I.    Background**

2          **A.  Factual Background**[1]

3          Plaintiff Mohammad Moayery ("Moayery" or "Plaintiff") owns real property located at 3715

4    Oakfield Drive, Sherman Oaks, California. FAC ¶ 1. Moayery alleges that his property suffered

5    property damage and his insurance company, State Farm, wrongfully denied his claim. Moayery

6    asserts claims for breach of contract, breach of the covenant of good faith and fair dealing, and

7    punitive damages. FAC ¶¶ 23-27, 28-33.

8          **B.  Procedural History**

9          On November 18, 2022, Moayery filed this action against State Farm in the Superior Court

10   of California, County of Los Angeles. ECF No. 1-1. On December 21, 2022, State Farm removed

11   this action to the United States District Court for the Central District of California based on diversity

12   jurisdiction. ECF No. 1. On January 17, 2023, Moayery filed the first amended complaint ("FAC")

13   alleging: (1) breach of contract and (2) breach of the covenant of good faith and fair dealing and

14   seeking punitive damages. ECF No. 11, *see generally* FAC. State Farm filed an Answer to the FAC

15   on January 31, 2021. ECF No. 12.

16         On October 19, 2023, the parties jointly filed this Motion in accordance with this Court's

17   standing order. ECF No. 23-1. The parties also filed a Joint Statement of Uncontroverted Facts. ECF

18   No. 23-2.

19         On November 29, 2023, the Court sent the parties the tentative. The parties reviewed it. On

20   November 30, 2023, the Court held oral argument on the Motion after providing the parties with a

21   tentative ruling.  At the hearing, counsel for State Farm declined the Court's invitation to provide

22   oral argument, explaining that there was nothing additional to be addressed that had not been

23   thoroughly addressed in the briefing. The Court now adopts its tentative ruling as its final order.

24         / / /

25         / / /

26

27   _____

28   [1] Unless otherwise indicated, the factual allegations listed below come from the First Amended Complaint, ECF No. 11
     ("First Amended Complaint" or "FAC").

1    **II.    <u>Applicable Law</u>**

2        **A.    Motions for Summary Judgment**

3        Summary judgment should be granted if "the movant shows that there is no genuine dispute

4    as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

5    56(a). Material facts are those that may affect the outcome of the case. *Nat'l Ass'n of Optometrists &*

6    *Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*,

7    477 U.S. 242, 248 (1986)). A dispute is genuine "if the evidence is such that a reasonable jury could

8    return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248.

9        Under Rule 56(a), a court also has authority to grant *partial* summary judgment, or

10   "judgment on less than the entire case." 10B Charles Alan Wright & Arthur R. Miller, *Federal*

11   *Practice and Procedure* § 2737 (4th ed. 2022) (citing Fed. R. Civ. P. 56(a)). Under Rule 56(g), a

12   court that "does not grant all the relief requested by the motion . . . may enter an order stating any

13   material fact . . . that is not genuinely in dispute and treating the fact as established in the case." Fed.

14   R. Civ. P. 56(g).

15       A court must view the facts and draw inferences in the manner most favorable to the non-

16   moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Chevron Corp. v. Pennzoil*

17   *Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). "In judging evidence at the summary judgment stage, the

18   court does not make credibility determinations or weigh conflicting evidence." *Soremekun v. Thrifty*

19   *Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). "A moving party without the ultimate burden of

20   persuasion at trial—usually, but not always, a defendant—has both the initial burden of production

21   and the ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire & Marine*

22   *Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). To carry its burden of production, the

23   moving party must either: (1) produce evidence negating an essential element of the nonmoving

24   party's claim or defense; or (2) show that there is an absence of evidence to support the nonmoving

25   party's case. *Id.*

26       Where a moving party fails to carry its initial burden of production, the nonmoving party

27   has no obligation to produce anything, even if the nonmoving party would have the ultimate burden

28   of persuasion at trial. *Id.* at 1102–03. In such cases, the nonmoving party may defeat the motion for

summary judgment without producing anything. *Id.* at 1103. However, if a moving party carries its burden of production, the burden shifts to the nonmoving party to produce evidence showing a genuine dispute of material fact for trial. *Liberty Lobby*, 477 U.S. at 248–49. Under these circumstances, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is no genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the motion for summary judgment shall be granted. *Id.* at 322 ("Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

A party cannot create a genuine issue of material fact simply by making assertions in its legal papers. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co.*, 690 F.2d 1235, 1238 (9th Cir. 1982). Rather, there must be specific, admissible evidence identifying the basis for the dispute. *See id.* "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may . . . consider the fact undisputed." Fed. R. Civ. P. 56(e)(2). The Court need not "comb the record" looking for other evidence; it is only required to consider evidence set forth in the moving and opposing papers and the portions of the record cited therein. Fed. R. Civ. P. 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). The Supreme Court has held that "[t]he mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Liberty Lobby*, 477 U.S. at 252. To carry its ultimate burden of persuasion on the motion, the moving party must demonstrate that there is no genuine issue of material fact for trial. *Nissan Fire*, 210 F.3d at 1102; *Celotex Corp.*, 477 U.S. at 323.

III.   **Findings of Fact**[2]

The Court finds that the following material facts are established for trial under Federal Rules of Civil Procedure 56(a) and 56(g).

**A. The incident**

Prior to leaving for Las Vegas, Moayery never noticed any humidity, moisture or wetness in the kitchen or the kitchen cabinet. UMF No. 30. On July 12, 2021, Moayery came home to find water gushing out of his kitchen sink cabinet onto the kitchen floor. UMF No. 26, 3. The water gushed from the back of the cabinet. UMF No. 26, 3. On or about July 13, 2021, Moayery contacted Ernesto Valdez to assess the reverse osmosis system. UMF No. 8. While there, Valdez turned on and off the valve under the sink; when the valve was on (while water to home was on), water gushed out of the sink. UMF No. 31. Valdez did not repair the reverse osmosis system, other than turn off the valve. UMF No. 33.

**B. The insurance policy**

Plaintiff Mohammad Moayery is a named insured under a Homeowners Policy (Policy No. 71-GM-F227-2) (hereafter "Policy") issued by Defendant State Farm. UMF No. 1. The policy provides, in SECTION I – LOSSES INSURED, Coverage A – Dwelling:

> *We* will pay for accidental direct physical loss to the property described in Coverage A, unless the loss is excluded or limited in **SECTION I – LOSSES NOT INSURED** or otherwise excluded or limited in this policy. However, loss does not include and *we* will not pay for, *any diminution in value*.

UMF 2, ECF No. 23-8, Ex. 1 at 12. The Policy provides in SECTION I – LOSSES NOT INSURED:

> 1. *We* will not pay for any loss to the property described in Coverage A that is caused by one or more of the items below, regardless of whether the loss occurs abruptly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:
>
> . . . .

---

[2] The facts set forth below are taken from the parties' respective Statements of Uncontroverted Facts and the submitted evidence. See ECF No. 23-2. To the extent that any statements of fact are omitted, the Court concludes they are not material to the disposition of this Motion. To the extent that any of the facts set below were allegedly disputed by the opposing party, the Court concludes that no actual dispute exists or that the adopted language resolves the dispute.

In making these Findings of Fact, the Court considered State Farm's Evidentiary Objections. ECF No. 23-37. The Court did not find any evidence objected to essential to finding any fact stated herein, and therefore need not reach the Evidentiary Objections.

f. wear, tear, decay, marring, scratching, deterioration, inherent vice, latent defect, or mechanical breakdown;
g. corrosion, electrolysis, or rust;
h. wet or dry rot[.]
. . . .

However, *we* will pay for any resulting loss from items a. through k. unless the resulting loss is itself a Loss Not Insured as described in this Section.

UMF 2, ECF No. 23-8 - Ex. 1 at 31. The Policy also provides:

3. *We* will not pay for, under any part of this policy, any loss that is caused by one or more of the items below, regardless of whether the event occurs abruptly or gradually, involves isolated or widespread damage, occurs on or off the residence premises, arises from natural or external forces, or occurs as a result of any combination of these:
. . . .
c. Water.

UMF 2, ECF No. 23-8 - Ex. 1 at 32-33 . Under the Policy, the "Water" exclusion has ten meanings. UMF 2, ECF No. 23-8 - Ex. 1 at 33. In relevant part, under the ninth definition of "Water," the "Water" exclusion is defined as, "seepage or leakage of water, steam, or sewage that occurs or develops over a period of time: (a) and is: (i) continuous; (ii) repeating; (iii) gradual; (iv) intermittent; (v) slow; or (vi) trickling; and" "from a: (i) heating, air conditioning, or automatic fire protective sprinkler system; (ii) household appliance; or (iii) plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings, or floors." *Id.* This ninth definition also provides, "***We*** also will not pay for losses arising from condensation or the presence of humidity, moisture, or vapor that occurs or develops over a period of time[.]" *Id.* The tenth definition of the water exclusion includes, "material carried or otherwise moved by any of the water or sewage, as described in items c.(1) through c.(9) above." *Id.* Finally, the Water exclusion ends by providing that State Farm "will pay for any accidental direct physical loss by fire, explosion, or theft resulting from water, provided the resulting loss is itself a ***loss insured***." *Id.*

### C.  The claim and the investigation

On or about July 17, 2021, Moaeary reported the loss to State Farm and State Farm opened a claim under the Policy. UMF No. 9.

/ / /

/ / /

### i.   The first site inspection

Damon Groves, a State Farm Claim Specialist, was assigned to Moayery's claim and scheduled a site inspection for July 20, 2021. UMF No. 10. During Groves' site inspection, Groves observed the melamine of the reverse osmosis system cabinet cracking and delaminating. UMF No. 11. Groves also observed that the bottom of the reverse osmosis system cabinet, the kickboard, and the bottom of the sides of the kitchen sink deteriorated. *Id.* In addition, Groves observed under the sink what he believed to be mold in an area along the bottom of the back wall of the kitchen. *Id.* Finally, Groves observed what he believed to be dry rot in an area of the wall under the house where water had exited. *Id.* Based on observations during the inspection, Groves determined that the loss was the result of continuous or repeated seepage or leakage ("CRSL") of water and State Farm denied the claim on July 22, 2021. UMF No. 12.

On August 3, 2021, Ulises Trejo, plumber and principal of Busy Bee Rooter and Plumbing Inc., came to the home and determined that the water into the home was the result of a "burst" water fitting. UMF No. 35; Ex. 9. On or about August 6, 2021, State Farm reopened the claim after it received correspondence from Moayery disputing State Farm's coverage determination and received the Busy Bee report. UMF Nos. 13, 40. State Farm interviewed Valdez on August 16, 2021.[3] UMF No. 14. Valdez did not repair the reverse osmosis system, other than turn off the gate valve. UMF No. 33. Groves entered a file note on August 16, 2021, memorializing his conversation with Valdez, stating:

> For this loss, the [Valdez] was there to pick up a check for the water heater situation above. While there the [named insured] asked him about the reverse water osmosis system. It was not an emergency call. He did not see any evidence of a [sudden] inundation of water nor the . . . [named insured] say anything about that. The [named insured] showed the plumber the system. [Valdez] saw that the problem was leaky lines to the reverse water osmosis system. He said it is "bad hosing". He said the [named insured] already [knew] that and was asking [ Valdez] to change the entire reverse osmosis system out because it had been leaking. [Valdez] said he did not touch the system, did not do any repairs. [Valdez] said the bottom of the cabinet was on the cabinet and the doors were on the cabinet when he was there. He said the cabinet showed clear signs of long term leaking from the system and he

---

[3] The parties appear to dispute whether Valdez was a handyman, plumber, and/or unlicensed roofer.

1      saw no evidence of a sudden burst. He then said he did not want to be involved any
      further. I thanked him for his time.

2 UMF No. 15. State Farm sent a *second* denial letter on or about August 17, 2021. UMF No. 16. State

3 Farm reviewed the Busy Bee Report and determined that the report did not change its coverage

4 position. *See* UMF No. 40, Ex. 2 at SF 000032-33. On September 29, 2021, State Farm sent a third

5 letter denying the claim, but did not reference the Busy Bee Report. UMF No. 44, Ex. 24; *see also*

6 SF 000033.

7                  ii.          **The second site inspection**

8        On August 31, 2022, more than a year later, State Farm received a letter from Moayery

9 asking for a second site inspection with a different claim specialist. UMF No. 17. On September 13,

10 2022, claims specialist Gerald Penick was assigned to the claim and tasked with conducting the

11 second site inspection, which was scheduled for September 16, 2022. UMF No. 18. During the site

12 inspection, Penick confirmed observations from the first State Farm inspection regarding possible

13 mold, delamination, and deterioration of the reverse osmosis system cabinet, and thereafter

14 requested that Moayery send his water bills to State Farm. UMF No. 19. Based on State Farm's

15 investigation of the claim, State Farm determined that the predominant cause of loss was wear, tear,

16 or deterioration of the reverse osmosis system and the damage was caused by the continuous or

17 repeated seepage or leakage of water. UMF No. 21. On October 21, 2022, Penick sent a letter to

18 Moayery reflecting State Farm's basis for the denial. UMF No. 20.

19 **II.**    **Discussion**

20        State Farm seeks summary judgment on the FAC, or in the alternative, partial summary

21 judgment on the following issues: (1) Moayery cannot establish a breach of contract cause of action

22 because there is no breach of contract or resulting damages[4]; (2) Moayery cannot establish breach of

23 the implied covenant of good faith and fair dealing because Moayery cannot establish that State

24 Farm's denial is unreasonable; and (3)Moayery's claim for punitive damages fails because Moayery

25

26

27 ────────────────

28 [4] State Farm more specifically argues that the loss is expressly excluded under the Policy.

1  cannot establish that state farm acted with malice, oppression, or fraud. ECF No. 23.[5] For the

2  reasons set forth below, the Court **DENIES** State Farm's motion for summary judgment.

3      **A.**    **State Farm is not entitled to summary judgment on the breach of contract claim.**

4      The elements of a breach of contract claim are: (1) the existence of a contract; (2) plaintiff's

5  performance of the contract; (3) defendant's material breach of the contract; and (4) damages to

6  plaintiff resulting from the breach. *Abdelhamid v Fire Ins. Exchange*, 182 Cal. App. 4th 990, 999

7  (Ct. App. 2010). "[A]bsent an actual withholding of benefits due, there is no breach of contract."

8  *Dalrymple v. United Serv. Auto. Assn.*, 40 Cal. App. 4th 497, 512, fn. 4 (Ct. App. 1995). To establish

9  the defense of noncoverage, the insurer has "the burden of proving that [the insured's] loss was

10 proximately caused by" "a peril specifically excluded" from the policy. *Strubble v. United Servs.*

11 *Auto. Assn.*, 35 Cal. App. 3d 498, 504 (Ct. App. 1973).

12     The "[i]nterpretation of an insurance policy is a question of law and follows the general rules

13 of contract interpretation." *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 647 (2003), *as modified*

14 *on denial of reh'g* (Sept. 17, 2003) (citation omitted). With respect to insurance contracts, policy

15 exclusions are interpreted narrowly against the insurer. *Id.* at 648 (citing *White v. Western Title Ins.*

16 *Co.* (1985) 40 Cal. 3d 870, 881); *see also Arenson v. Nat'l Auto. & Cas. Ins. Co.*, 45 Cal. 2d 81, 83

17 (1955) (same). "[C]lauses identifying coverage are interpreted broadly." *Garvey v. State Farm Fire*

18 *& Cas. Co.*, 48 Cal. 3d 395, 406 (1989) (citation omitted).

19     **i.**  **There is a genuine dispute of fact as to whether the wear and tear**

20         **exclusion applies.**

21     State Farm argues that it is entitled to summary judgment because the loss is expressly

22 excluded under the Policy. Joint Br. at 23-25. State Farm, therefore, has the burden of showing that

23 an exclusion applies. *Strubble*, 35 Cal. App. 3d at 504.

24     State Farm contends that two exclusions apply: the wear, tear, and/or deterioration exclusion

25 as well as the water exclusion. Joint Br. at 23-25. State Farm points out that the Policy provides

26 coverage for accidental direct physical loss to property but specifically excludes coverage for losses

27 ─────────────────

28 [5] With respect to the briefing, the Court cites to ECF page numbers.

resulting from wear, tear, or deterioration. Joint Br. at 23-24, UMF No. 2. State Farm points to evidence that demonstrates that the reverse osmosis system failed due to wear, tear, or deterioration. UMF Nos. 5, 22. Specifically, Moayery's engineering expert, Bruce Agle of 4x Forensics, testified that the plastic fitting of the reverse osmosis system failed due to a low ductility fracture morphology and that the material had been degrading "for a long, long time." UMF No. 22; Osorio Decl. ¶¶ 4-5; Ex. 18 (Agle Depo. 38:25-39:6). However, Moayery points to Trejo's testimony, a plumber, who testified that there was no evidence of the reverse osmosis system being hit, broken or scratched, it was not old, not worn out, there was no deterioration, or defective material. UMF No. 37; Ex. 23 (Trejo Depo. 29:21-30:13).[6] Viewing evidence favorably as to the nonmoving party, there is a dispute of fact as to whether the reverse osmosis system failed to due wear and tear. Therefore, State Farm is not entitled to summary judgment based on the wear and tear exclusion.

### ii.   There is a genuine dispute of fact as to whether the water exclusion applies to *all* of Moayery's damages.

State Farm next argues that the *damage* for which Moayery seeks coverage for is for long-term water exposure such that the water exclusion applies. Joint Br. at 24. State Farm argues that *regardless* of whether the damage was caused by the reverse osmosis system, the adjacent dishwasher, or some other source of water, "the application of the exclusion turns on whether the *damage* was caused by 'continuous…leakage' of water, meaning a gradual discharge, as opposed to a sudden, one-time burst of water." *Sokol v. State Farm Gen. Ins. Co.*, No. 8:20-cv-00128-SB-DFM, 2021 U.S. Dist. LEXIS 129489 at *11 (C.D. Cal. June 25, 2021) (emphasis added). State Farm argues that the undisputed evidence shows that the damage to the affected areas indicate that the loss was due to long-term water exposure. Joint Br. at 24-25.

Moayery opposes, arguing that State Farm has the burden of showing the damage to his home "occurred from a slow trickling leak." *See* Joint Br. at 27. Moayery further argues "that State

---

[6] Plaintiff makes a confusing argument in opposition. Plaintiff argues that even if the pipe failed from wear and tear, the language of the exclusion expressly provides coverage for "resulting loss," such as the water that sprayed out of the pipe and all the resulting water damage to his home that Moayery made claim for. Plaintiff cites the following language – "we will pay for any resulting loss from items a. through k. unless the resulting loss is itself a Loss Not insured as described in this Section."

1   Farm must disprove that this was a sudden event." *Id.* Moayery contends that he only needs to

2   present facts that would defeat State Farm's claim that the water exclusion applies, which Moayery

3   characterizes as "slow gradual leak," and further contends that there are at least triable issues of fact.

4   Joint Br. at 28-29. Here, Moayery appears to misapprehend State Farm's burden. State Farm has the

5   burden of demonstrating that the water exclusion applies to the claimed loss under the *terms* of the

6   Policy. *Strubble*, 35 Cal. App. 3d at 504. State Farm does not have the burden of demonstrating that

7   the damage occurred from a "slow trickling leak" or a "slow gradual leak."

8          The Policy provides that it does not cover "any loss that is caused by one or more of the

9   items below, regardless of whether the event occurs abruptly or gradually, involves isolated or

10   widespread damage, occurs on or off the residence premises, arises from natural or external forces,

11   or occurs as a result of any combination of" water. Joint Br. at 25; UMF No. 2. As noted above,

12   under the Policy, the "Water" exclusion has ten meanings. UMF No. 2, ECF No. 23-8 - Ex. 1 at 33.

13   State Farm argues that the ninth definition of the water exclusion applies. Joint Br. at 24-25. Losses

14   caused by water are not covered. UMF No. 2, ECF No. 23-8 - Ex. 1 at 33. In relevant part, this

15   definition of "Water" is defined as, "seepage or leakage of water, steam, or sewage that occurs or

16   develops over a period of time: (a) and is: (i) continuous; (ii) repeating; (iii) gradual; (iv)

17   intermittent; (v) slow; *or* (vi) trickling; and" "from a: . . . (ii) household appliance; or (iii) plumbing

18   system, including from, within or around any . . . other plumbing fixture, including their walls,

19   ceilings, or floors." *Id.* This definition also provides, "*We* also will not pay for losses arising from

20   *condensation or the presence of humidity, moisture, or vapor that occurs or develops over a period*

21   *of time*[.]" Joint Br. at 24-25; *see also* UMF No. 2 (emphasis added).

22          Here, it is undisputed that the reverse osmosis system cabinet's melamine was cracked and

23   delaminated. UMF Nos. 6, 11, 19, 25. State Farm's construction expert testified that the melamine

24   surface is durable, and it would take long-term water exposure to get the kind of delamination of the

25   melamine that was witnessed on the reverse osmosis system cabinet floor piece. Joint Br. at 24; Ex.

26   20, Kennedy Depo. 30:21-32:19; 38:1-10. In addition, the plywood subfloor under the reverse

27   osmosis system cabinet baseboard contained staining, cracking, and rot on the left side of the

28   subfloor where the reverse osmosis system was located. UMF No. 7; Ex. 20, Kennedy Depo. 35:2-7.

Moayery's own expert, Bruce Agle testified that the plywood subfloor where the reverse osmosis system was located evidenced signs of long-term water exposure. UMF No. 24, Ex. 18, Agle Depo. 26:22-21:17, 27:20-28:8. Agle conceded that the subfloor evidenced long-term water damage but attributed the damage to a dishwasher or potential other source of water. *See id.*

Here, it is undisputed that Moayery's damages include damage to tiles, flooring, cabinets, countertop, walls, outside stucco and a majority of the subfloor. UMF No. 55. However, State Farm's evidence only references some of the items for which Moayery claims damages, specifically, portions of the subfloor and certain parts of the cabinets. Joint Br. at 24-25. Consequently, State Farm has not demonstrated that *all* of Moayery's damages arise from long-term water damages. Viewing the evidence favorably as to the nonmoving party, there is a dispute of fact as to whether some of Moayery's damages are excluded under the Policy. Accordingly, the Court **DENIES** summary judgment on the breach of contract claim.

**B.     State Farm is not entitled to summary judgment on the breach of the implied covenant of good faith and fair dealing claim.**

An insured cannot maintain a claim for "breach of the implied covenant of good faith and fair dealing absent a covered loss." *Benavides v. State Farm General Ins. Co.*, 136 Cal. App. 4th 1241, 1250 (Ct. App. 2006). "[A]n insurer's denial of or delay in paying benefits gives rise to tort damages only if the insured shows the denial or delay was unreasonable." *Wilson v. 21st Century Ins. Co.*, 42 Cal. 4th 713, 723 (2007); *Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 992 (9th Cir. 2001).

A trier of fact can determine an insurer's bad faith through evidence of "motive, intent[,] and state of mind." *Chateau Chamberay Homeowners Assoc. v. Associated Int'l Ins. Co.*, 90 Cal. App. 4th 335, 350 (Ct. App. 2001). However, the reasonableness of the insurer's decisions in denying a claim can be resolved as a matter of law when "there are no conflicting inferences, [such that] reasonable minds could not differ." *Id.* at 350 (quoting *Walbrook Ins. Co. v. Liberty Mutual Ins. Co.* (1992) 5 Cal. App. 4th 1445, 1454–1455); *see also Lunsford v. Am. Guarantee & Liab. Ins. Co*., 18 F.3d 653, 656 (9th Cir. 1994) ("A court can conclude as a matter of law that an insurer's denial of a claim is not unreasonable, so long as there existed a genuine issue as to the insurer's liability.") "[T]he reasonableness of the insurer's decisions and actions must be evaluated as of the time that

they were made; the evaluation cannot fairly be made in the light of subsequent events which may provide evidence of the insurer's errors." *Chateau Chamberay Homeowners Assoc.*, 90 Cal. App. 4th at 347 (citation omitted). "A denial of a claim on a basis unfounded in the facts known to the insurer, or contradicted by those facts, may be deemed unreasonable." *Wilson*, 42 Cal. 4th at 721 (emphasis added).

### i. State Farm has not shown that the loss is entirely excluded under the policy.

State Farm argues that it is entitled to summary judgment on the breach of the covenant of good faith and fair dealing claim because Moayery's loss is excluded under the Policy. Joint Br. at 30. As discussed previously, the Court concluded that there is a genuine dispute of material fact with respect to Moayery's breach of contract claim. Therefore, State Farm is not entitled to summary judgment on this claim on this basis.

### ii. There is a dispute of material fact as to whether State Farm acted reasonably.

State Farm next argues that it is entitled to summary judgment on this claim because the undisputed evidence shows that State Farm acted reasonably when it denied Moayery's claim. Joint Br. at 30. Moayery opposes arguing that State Farm based its "denial solely on the words of an unlicensed roofer." Joint Br. at 32-34. Moayery argues that the State Farm improperly "chose to deny [the claim] based on weak and biased evidence that served its purpose." Joint Br. at 32-33. In the FAC, Moayery alleged, in relevant part, that State Farm breached the implied covenant of good faith and fair dealing by unreasonably and improperly handling Plaintiff's claim "including, but not limited to, initial denial of the claim before investigating it, failing to consult/refer to experts, extending coverage but only paying a small portion of Plaintiff's insurance claim and then ignoring evidence of extensive water flow and damage to Plaintiff's home." FAC ¶ 30(c).

On August 6, 2021, State Farm reopened the claim after Moayery disputed its coverage determination. UMF No. 13; Exs. 2, 5-6. On August 16, 2021, State Farm attempted to contact Valdez, a witness to the damage. *See* UMF No. 8, 14. Groves spoke with Valdez on August 16, 2021, and Valdez told him that he saw clear signs of long-term leaking from the reverse osmosis

1  system. UMF Nos. 14-15. Based on Grove's discussion with Valdez, on August 17, 2021, State

2  Farm sent a second letter denying the claim. UMF No. 16; Ex. 8.

3      Since Moaery argues that the denial was improper because it was based on the words of

4  "your plumber," the Court focuses on the second and third denial letters. UMF Nos. 43, 44; Dkts.

5  23-15 (Ex. 8), 23-21 (Ex. 24). It is undisputed that the second and third denial letters reference

6  Moaery's "plumber" which all parties understand to refer to Valdez, even though Valdez is not a

7  plumber. UMF Nos. 8, 43, 44. Moaery points out that the claim file demonstrated that Valdez was

8  biased, and disliked Moaery. Joint Br. at 33, UMF No. 42.

9      Moaery sent the Busy Bee report in response to State Farm's *second* denial of his claim. *See*

10  UMF Nos. 16, Ex. 8; No. 40, Ex. 2. However, on September 29, 2021, State Farm sent a third letter

11  denying the claim. UMF No. 44, Ex. 24; *see also* SF 000033. Moaery argues that the letters do not

12  reference that he told State Farm that he saw water "pouring out of the house" or the plumber's

13  report.[7] Joint Br. at 33. Indeed, Moaery's licensed plumber, Ulises Trejo determined that the water

14  into the home was the result of a "burst" water fitting. UMF No. 35. Viewing the evidence favorably

15  as to the nonmoving party, there are disputed issues of material fact regarding the extent to which

16  State Farm relied on various sources of information—such as the statements of Valdez—as well as

17  whether it was unreasonable to do so—particularly in light of Valdez's alleged bias and lack of

18  qualifications. Accordingly, the Court **DENIES** summary judgment on the breach of the implied

19  covenant of good faith and fair dealing claim.

20      **C. State Farm is not entitled to summary judgment on the punitive damages claim.**

21      Moaery seeks punitive damages in connection with his breach of the covenant of good faith

22  and fair dealing. FAC ¶ 33. State Farm argues that it is entitled to summary judgment on this claim

23  because there is no evidence that State Farm acted with malice, oppression, or fraud. Joint Br. at 42-

24  43. State Farm argues that its investigation of the claim was reasonable. Joint Br. at 43. Moaery

25  opposes, arguing that an insurer cannot misrepresent "to claimants pertinent facts," Cal. Ins. Code §

26

27  _____

28  [7] With respect to the plumber's report, it is undisputed that Moaery provided this report in response to the second denial letter. UMFs Nos. 13, 40.

790.03(h)(1)[8], and to do is fraudulent. *Stalberg v. W. Title Ins. Co.*, 230 Cal. App. 3d 1223, 1234 (Ct. App. 1991). Joint Br. at 43. Moayery implicitly argues that the investigation conducted by State Farm was insufficient. Joint Br. at 43-44. Moayery also argues that Valdez had nothing to do with the water, and cites UMF Nos. 16 and 42 in support. Joint Br. at 44.

A plaintiff may obtain punitive damages "where it is proven by clear and convincing evidence that the defendant has been guilty of *oppression, fraud, or malice*." Cal. Civ. Code § 3294(a) (emphasis added); *id.* § 3294(c) (defining malice, oppression, and fraud). The clear and convincing evidence standard for punitive damages applies on summary judgment. *Basich v. Allstate Ins. Co.*, 87 Cal. App. 4th 1112, 1119–20 (2001). With respect to punitive damages liability against employers,

> [a]n employer shall not be liable for damages pursuant to subdivision (a), based upon acts of an employee of the employer, unless the employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice. With respect to a corporate employer, the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation.

Cal. Civ. Code § 3294(b). The Court reminds the parties that the Court does not make credibility determinations on motions for summary judgment. *Soremekun*, 509 F.3d at 984. Moayery argues that State Farm dismissed the opinion of Trejo, dismissed a video of water spraying out of the pipe, and Moayery's statements concerning water damage. Joint Br. at 44. State Farm points out that Moayery only disputed the fact that Valdez was a plumber, but does not dispute the fact Moayery contacted Valdez to assess the reverse osmosis system. Joint Br. at 45. State Farm also counters that Moayery has failed to point to evidence supporting Moayery's positions and that the undisputed facts demonstrate otherwise. Joint Br. at 45.

---

[8] California Insurance Code section 790.03 delineates unfair competition as well as "unfair and deceptive acts or practices in the business of insurance." Section 790.03 (h)(1) provides, it is unfair or deceptive act to "[k]nowingly committing or performing with such frequency as to indicate a general business practice any of the following unfair claims settlement practices: (1) Misrepresenting to claimants pertinent facts or insurance policy provisions relating to any coverages at issue." Cal. Ins. Code § 790.03 (h)(1).

The Court in *Stalberg* found that the there was substantial evidence that the insurer violated Insurance Code section 790.03(h), because Western, the insurer "created and recorded the deeds containing the wild easements, *and concealed this fact from its insureds*. Western misrepresented pertinent facts to its own insureds." 230 Cal. App. 3d 1223 at 1234 (emphasis added). Moayery argues that State Farm dismissed the Busy Bee report, dismissed a video of water spraying, and dismissed Moayery's testimony, Joint Br. at 44; given that the findings Moayery points to were not discussed in the relevant denial letters, a jury could find that this is circumstantial evidence that these findings were indeed dismissed.[9]

For these reasons and because the Court has concluded that there is a dispute of material fact with respect to the breach of implied covenant of good faith and fair dealing claim, and because the punitive damages claim is based on the reasonableness of State Farm's conduct, the Court concludes that State Farm is not entitled to summary judgment on this claim. Accordingly, the Court **DENIES** summary judgment as to the punitive damages claim.

### III.    Conclusion

For the foregoing reasons, the Court hereby ORDERS as follows:

1. Summary judgment is DENIED as to the First Cause of Action for Breach of Contract;

2. Summary judgment is DENIED as to the Second Cause of Action for Breach of the Implied Covenant of Good Faith and Fair Dealing; and

3. Summary judgment is DENIED as to the Punitive Damages Claim.

IT IS SO ORDERED.

Dated: November 30, 2023

_____

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge

---

[9] In contrast, while Moayery argues that State Farm misrepresented to Moayery that Ernesto Valdez was Moayery's plumber, this would not support a finding that State Farm concealed a fact from Moayery because it remains undisputed that Moayery contacted Valdez to assess the reverse osmosis system, and that State Farm interviewed Valdez to gain information regarding Moayery's claim. UMF Nos. 8, 33, 14.